```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
```

WILLIE SINGLETON,

              Petitioner,

   -vs-

WILLIAM A. LEE,

              Respondent.
_____

**DECISION AND ORDER**
**No. 11-CV-6157**

## I. Introduction

*Pro se* Petitioner Willie Singleton ("Petitioner") has filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the constitutionality of his custody pursuant to a judgment entered July 15, 2008, in New York State, County Court, Ontario County, convicting him, after a jury trial, of two counts of Assault in the Second Degree (N.Y. Penal Law ("Penal Law") §§ 120.05[2] (dangerous instrument) and 120.05[7] (while confined in a correctional facility)). Petitioner was sentenced to two concurrent, determinate terms of seven years imprisonment and five years post-release supervision.

## II. Factual Background and Procedural History

On October 29, 2007, an Ontario County Grand Jury charged Petitioner with two counts of Assault in the Second Degree. The charges arose from an incident that occurred on September 11, 2007, wherein Petitioner, while an inmate at the Ontario County jail, attacked another inmate, Donald Lume ("Lume" or "the victim"), striking him in the face and arm with a mop wringer.

1

**A.    The Trial**

**1.    The People's Case**

On September 11, 2007, Petitioner was an inmate at the Ontario County jail. Correction Officer ("C.O.") Sandra Allen observed Petitioner in a common area of the jail pacing back and forth. Trial Trans. [T.T.] 433-435, 441-442, 460. When C.O. Allen asked Petitioner what his problem was, Petitioner responded that "someone had taken his fuckin' aura and he wanted his aura back now." T.T. 445. Petitioner appeared agitated and stated that people were talking about him. T.T. 398, 445. C.O. Allen tried to convince Petitioner that no one had been talking about him and asked him if he want to "go out for rec." Petitioner declined. T.T. 446. C.O. Allen then suggested that Petitioner go to his cell and stay in it with the door locked. Petitioner told C.O. Allen that he would not do so. T.T. 447. Petitioner then stated that, "he was gonna take care of it right now." T.T. 447.

At that point, Petitioner walked into the janitor's closet where the cleaning supplies were kept. T.T. 447. C.O. ordered the unit to lock-down. T.T. 398, 449. Petitioner came out of the closet holding a mop wringer. T.T. 400, 408. C.O. said to Petitioner, "don't do this" and Petitioner began to walk towards her with the wringer in his hand. T.T. 449.

When the lock-down was announced, inmate Lume began to walk towards his cell. T.T. 399, 450. As he passed Petitioner, Petitioner raised the mop wringer above his shoulders and brought

2

it down, striking Lume in the elbow and face.  T.T. 401, 422, 450-451.  Lume fell to his knees, screamed, and ran from Petitioner. T.T. 401, 422, 452.  Lume felt severe pain and was bleeding profusely.  T.T. 402-403.

C.O. Christopher Romano responded to C.O. Allen's lock-down order.  T.T. 465-466.  C.O. Romano observed Petitioner with the mop wringer and tried to calm him down.  T.T. 468.  Petitioner kept repeating, "I can't take it anymore."  T.T. 468.  Sergeant James Lyons approached Petitioner and told him to drop the wringer or he would spray him with mace.  T.T. 470.  Petitioner responded, "[g]o ahead and spray."  T.T. 477.  Sergeant Lyons then pepper-sprayed Petitioner three times and handcuffed him.  T.T. 455, 474, 477.

Lume was treated for his injuries at the jail facility.  He was later transferred to F.F. Thompson Hospital where he was given a partial cast for his fractured elbow.  T.T. 405.  Lume had to have follow-up treatment and physical therapy for his injuries. T.T. 405-406.  Lume testified that he felt pain for two to three months and could not lift heavy weight in that time period.  T.T. 406-407.

On the day of the incident, the crime scene unit of the Ontario County Sheriff's Department responded to the jail and photographed the scene and the mop wringer.  The mop wringer itself was not collected into evidence.  T.T. 426-433.

### 2. The Defense's Case

Petitioner testified in his defense and denied ever striking Lume with a mop. Petitioner testified that, on September 11, 2007, he "was just watching TV, just finishing doing [his] cell study." T.T. 493-494, 503. According to him, he was in a good mood that day, and he denied ever going into the janitor's closet and retrieving the mop wringer. T.T. 493-494, 502, 504. Petitioner denied that he was pepper sprayed or that he was part of the "event." T.T. 508. Petitioner testified further that he remembered being ordered to "lock in" and that he did not immediately obey that command. T.T. 509.

### 3. Verdict and Sentencing

The jury found Petitioner guilty as charged. T.T. 565. Thereafter, Petitioner was adjudicated a second violent felony offender, and sentenced to two concurrent, determinate terms of seven years imprisonment and five years post-release supervision. Sentencing Mins. [S.M.] 52.

### B. The Motions to Vacate the Judgment

On January 6, 2009, Petitioner moved, pursuant to N.Y. Crim. Proc. Law ("CPL") § 440.10, to vacate his judgment of conviction on the grounds that the material evidence, mainly the mop ringer, was not produced at trial and that the evidence was legally insufficient to support the conviction because the prosecutor introduced no medical evidence at trial to prove the physical injury element. See Resp't Ex. A.

On March 17, 2009, Petitioner filed a second motion to vacate the judgment on the ground that he was not properly arraigned as a second violent felony offender in accordance with CPL § 200.60(3)(b).[1]  See Resp't Ex. B.

On July 7, 2009, the court denied the motions.  The court, relying on CPL § 440.10(2)(b), denied Petitioner's claims on the basis that Petitioner's appeal was pending and the claims were record-based.  See Resp't Ex. D.  Petitioner did not appeal the denial of his motions in the Appellate Division.

### D.  Direct Appeal

Through counsel, Petitioner appealed his judgment of conviction on the following grounds: (1) that the trial court erred when it failed to ensure that Petitioner was competent to stand trial; (2) the admission of unrelated crime evidence in the prosecution's case-in-chief, in the absence of a proper showing and limiting instructions, constituted reversible error; and (3) the sentence was harsh and excessive.  See Resp't Ex. E.  The Appellate Division, Fourth Department unanimously affirmed Petitioner's judgment of conviction on November 12, 2010.  People v. Singleton, 78 A.D.3d 1490 (4th Dep't 2010) (Resp't Ex. H); lv. denied, 16 N.Y.3d 837 (2011) (Resp't Ex. J).

---

[1] CPL § 200.60 sets forth the procedure for indicting a defendant for a crime that was elevated to a felony based on the conviction of a prior specified offense.

5

**E.   The Habeas Corpus Petition**

The instant habeas corpus petition followed, wherein Petitioner seeks relief on the following grounds: (1) his constitutional right to be present at all material stages of his trial was violated when he was improperly excluded from sidebar conferences; (2) his predicate felony conviction for failure to register as a sex offender was obtained in violation of his due process and equal protection rights and was unlawfully used to enhance his sentence; (3) he was improperly arraigned in violation of his Fourteenth Amendment rights; and (4) the People failed to introduce the actual mop wringer that he allegedly used to strike the victim.  See Pet. ¶22A-D (Dkt. No. 1); Reply (Dkt. No. 9).

For the reasons that follow, habeas relief is denied and the petition is dismissed.

**III. Exhaustion Requirement**

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ."  28 U.S.C. § 2254(b)(1)(A);  see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999);  accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir.1994), cert. denied, 514 U.S. 1054 (1995).  "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*), cert. denied,

464 U.S. 1048 (1984). As discussed below, all of Petitioner's claims are unexhausted.

**IV. Analysis of the Petition**

    **1. Petitioner's Claim that his Prior Conviction was Obtained in Violation of his Due Process and Equal Protection Rights (Ground 2) is Unexhausted and Meritless**

Petitioner claims, for the first time in the instant habeas petition, that his predicate felony conviction for failure to register as a sex offender was obtained in violation of his due process and equal protection rights. As such, he appears to argue that his sentence was unlawfully enhanced by this prior conviction. See Pet. ¶ 22B; Reply at 5-6. Because Petitioner failed to raise this claim in the state courts either on direct appeal or in his collateral motions, the claim is unexhausted. See 28 U.S.C.A. § 2254(b)(1). Petitioner's failure to exhaust this claim, however, is not fatal to the Court's disposition of it on the merits. Because the Court finds the claim to be wholly meritless, it has the discretion to dismiss the petition notwithstanding Petitioner's failure to exhaust.[2] See 28 U.S.C. § 2254(b)(2); Pratt v. Greiner, 306 F.3d 1190, 1197 (2d Cir. 2002).

---

[2] The Second Circuit has not yet established a standard for denying unexhausted claims under 28 U.S.C. § 2254(b)(2), but all four districts in New York have applied the "patently frivolous" test for dismissing such claims. See, e.g., Love v. Kuhlman, No. 99 Civ. 11063, 2001 U.S. Dist. LEXIS 22572 (S.D.N.Y. Dec. 12, 2001); Cruz v. Artuz, No. 97 Civ. 2508, 2002 U.S. Dist. LEXIS 11150 (E.D.N.Y. June 24, 2002); Toland v. Walsh, No. 02 Civ. 0399, 2008 U.S. Dist. LEXIS 24616 (N.D.N.Y. Mar. 26, 2008); Hammock v. Walker, 224 F. Supp. 2d 544 (W.D.N.Y. 2002). A minority of courts in this Circuit have denied such petitions when they do not raise even a colorable federal claim. See Hernandez v. Lord, No. 00 Civ. 2306, 2000 U.S. Dist. LEXIS 10228 (S.D.N.Y. July 21, 2000) (discussing cases applying this standard) (internal quotation marks omitted). Under either of these standards, Petitioner's claims are meritless.

Initially, Petitioner's claim is factually incorrect. The record reflects that Petitioner's 1984 first-degree rape conviction was the basis for the adjudication as a second violent felony offender and not, as Petitioner claims, his conviction for failure to register as a sex offender. S.M. 34-36. Thus, Petitioner's claim is factually baseless and provides no basis for habeas relief.

In any event, assuming arguendo that Petitioner's sentence had been enhanced by the failure to register as a sex offender conviction, his claim that said prior conviction was unconstitutionally obtained is barred from habeas review by the rule of Lackawanna County Dist. Attorney v. Coss, 532 U.S. 394 (2001). In that case, the Supreme Court held that

> once a state conviction is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), the conviction may be regarded as conclusively valid. If that conviction is later used to enhance a criminal sentence, the defendant generally may not challenge the enhanced sentence through a petition under § 2254 on the ground that the prior conviction was unconstitutionally obtained.

532 U.S. at 403-04 (internal citation omitted); accord Dickens v. Filion, 02 CIV. 3450 (DLC), 2003 U.S. Dist. LEXIS 4661, *14 (S.D.N.Y. Mar. 28, 2003); Corso v. Walker, 253 F. Supp. 2d 454, 457 (E.D.N.Y. 2003). The Court's majority recognized an exception to this "general" rule only in cases in which "the prior conviction used to enhance the sentence was obtained where there was a failure to appoint counsel in violation of the Sixth Amendment."

Lackawanna, 532 U.S. at 404.  Three Justices also recognized the possibility of two additional exceptions:  1) where a state court, "without justification, refused to rule on a constitutional claim that has been properly presented to it," or 2) "after the time for direct or collateral review has expired, a defendant [has] obtained compelling evidence that he is actually innocent of the crime for which he was convicted, and which he could not have uncovered in a timely manner."   Id. at 405 (plurality opinion) (citations omitted).

Here, Petitioner makes no claim that the conviction for failure to register as a sex offender is still open to direct or collateral attack.  Nor does he allege that the state court failed to appoint him counsel in violation of the Sixth Amendment -- the only exception recognized by the majority in Lackawanna.  Thus, even assuming that the failure to register as a sex offender conviction was used to enhance Petitioner's sentence, he "may not challenge the enhanced sentence through a petition under § 2254 on the ground that the prior conviction was unconstitutionally obtained."  See id. at 404.[3]

In sum, Petitioner's claim is factually baseless and, in any event, barred by the doctrine set forth in Lackawanna. Accordingly, the claim is dismissed.

---

[3] The Court notes that Petitioner does not allege that he fits within either of the exceptions that the plurality in Lackawanna discussed.  He does not argue that the state court refused to rule on a constitutional claim raised with respect to the earlier conviction. Nor has he submitted "evidence that he is actually innocent of the crime."  See Lackawanna, 532 U.S. at 404-06.

### 2. Petitioner's Claim that he was Improperly Excluded from Sidebar Conferences in Violation of his Right to be Present at all Material Stages of his Trial (Ground One) is Unexhausted and Meritless

Petitioner argues, for the first time in the habeas petition, that he was improperly excluded from sidebar conferences in violation of his constitutional right to be present at all material stages of his trial. See Pet. ¶ 22A; Reply at 4. Because Petitioner failed to raise this claim in the state courts, it is unexhausted for purposes of federal habeas review. Nonetheless, the Court finds that the claim is meritless and dismisses it, like the prior unexhausted claim, pursuant to 28 U.S.C. § 2254(b)(2).

A criminal defendant's constitutional right to be present at all stages of his trial is rooted in the Confrontation Clause of the Sixth Amendment, and is protected by the Due Process Clause where the defendant does not actually confront the witness against him. United States v. Gagnon, 470 U.S. 522, 526 (1985) (citing Illinois v. Allen, 397 U.S. 337, 90 S. Ct. 1057, 25 L. Ed. 2d 353 (1970)). However, the right is not absolute and is triggered only when the defendant's "presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charges." Snyder v. Massachusetts, 291 U.S. 97, 105-06 (1934); see also Kentucky v. Stincer, 482 U.S. 730, 745 (1987) (stating that the due process clause guarantees a criminal defendant "the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure"). Where the defendant's absence during

a proceeding does not defeat the fundamental fairness of the trial or his ability to defend against the charges, his right to attend the proceeding is not implicated under the due process clause. Snyder, 291 U.S. at 105-06.  Further, there is no constitutional right to be present "when presence would be useless, or the benefit but a shadow."  Snyder, 291 U.S. at 106-07.  The right to be present during critical stages of trial is circumscribed by harmless error analysis.  Rushen v. Spain, 464 U.S. 114, 119 n.2 (1983).

Initially, it is unclear to the Court the precise nature of Petitioner's argument insofar as the record reflects that a number of sidebar conferences were conducted on the record at Petitioner's trial and that Petitioner was, in fact, present for most them. T.T. 205, 259-260, 299, 304, 357.  In any event, Petitioner has not come forward with any evidence –- or even so much as alleged –- that his presence during any of the sidebar conferences of which he claims he was improperly "excluded" from would have had any effect on the trial.  Thus, he has failed to make any showing that his presence during the sidebar conferences was required to ensure him a "fair and just hearing," or a "reasonably substantial . . . opportunity for him to defend against the charge."  Snyder, 291 U.S. at 105-106.  Accordingly, Petitioner's claim that he was improperly excluded from sidebar conferences in violation of his constitutional right to be present at all material stages of his trial is meritless.  The claim is dismissed.

### 3. Petitioner's Remaining Claims (Grounds Three and Four) are Unexhausted But Deemed Exhausted and Procedurally Defaulted

Petitioner argues that: (1) his Fourteenth Amendment rights were violated when he was improperly arraigned; and (2) the People failed to introduce the actual mop wringer at trial that Petitioner allegedly used to strike the victim. See Pet. ¶ 22C-D. As discussed below, these claims are unexhausted, but deemed exhausted and procedurally defaulted.

In his motions to vacate, Petitioner raised both of these claims; however, he failed to appeal the denial of said motions. Thus, Petitioner did not present these claims to the "highest state court from which a decision can be had." Daye, 696 F.2d at 190 n.3. These claims, therefore, remain unexhausted. Nonetheless, the Court deems them exhausted and procedurally defaulted because state review of these claims is no longer available to Petitioner. Petitioner cannot again seek leave to appeal the claims. See N.Y. Court Rules § 500.20. Moreover, collateral review of the claims is also barred because they are matters of record that could have been raised on direct appeal, but unjustifiably were not. Returning to state court to exhaust the claims by way of another CPL § 440.10 motion, therefore, would be futile. See CPL § 440.10(2)(c). Accordingly, the instant unexhausted claims are deemed exhausted but procedually defaulted from habeas review. See Bossett, 41 F.3d at 828; Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2001).

A procedural default can be cured if the petitioner "can show cause for the default and prejudice, or demonstrate that failure to consider the claim will result in a miscarriage of justice (i.e., the petitioner is actually innocent)." Aparicio, 269 F.3d at 90. Petitioner has not met this standard. He has not alleged cause and prejudice. Moreover, he has not attempted to demonstrate that he is "actually innocent" so as to invoke the "fundamental miscarriage of justice" exception to the procedural default rule. Thus, Petitioner's remaining claims are procedurally defaulted from habeas review and are dismissed on that basis.

**V.   Conclusion**

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. No. 1) is denied, and the petition is dismissed. Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. Coppedge v. United States, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action.

13

Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED**.

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:   April 16, 2012
         Rochester, New York